IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KAREN LEMOINE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil No. 14-cv-079-CJP**[1] |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social** ) | |
| **Security,** ) | |
| ) | |
| **Defendant.** ) | |

### **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), *pro se* plaintiff Karen Lemoine seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

### **Procedural History**

Plaintiff applied for benefits in October, 2010, alleging disability beginning on June 7, 1998. (Tr. 14). After holding an evidentiary hearing, ALJ Robert G. O'Blennis denied the application in a written decision dated September 26, 2012. (Tr. 14-22). The Appeals Council denied review and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This matter was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c).   See, Doc. 11.

## Issues Raised by Plaintiff

Plaintiff's brief, Doc. 25, raises the following points:

1.  Plaintiff injured her back in June of 1998, and received Worker's Compensation benefits as a result.   She was insured for DIB only through December 31, 2003.   Her Worker's Compensation claim was not fully resolved until February of 2005.   Plaintiff contends that the receipt of Worker's Compensation benefits would have "inhibited me from collecting Social Security Disability for the duration of my Worker's Compensation case, which lasted past my date of [sic] last insured."

2.  The ALJ erred in giving little weight to Dr. Kennedy's second opinion.

3.  Plaintiff's former attorney mishandled her case.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).   For a DIB claim, a claimant must establish that she was disabled as of her date last insured.   *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20

2

C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step

3

three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th   Cir. 1984).   *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Ms. Lemoine was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971).   In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility,

or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ O'Blennis followed the five-step analytical framework described above. He determined that plaintiff was insured for DIB only through December 31, 2003. The ALJ found that plaintiff had the severe impairment of status post lumbosacral fusion with spinal cord stimulator.   He further determined that this impairment did not meet or equal a listed impairment.

The ALJ found that, as of her date last insured, Ms. Lemoine had the residual functional capacity (RFC) to perform sedentary work with no climbing of ropes, ladders, or scaffolds, occasional climbing of ramps and stairs and only occasional stooping, kneeling, crouching, and crawling, and no exposure to unprotected heights or dangerous moving machinery, no exposure to full body vibration, no repetitive operation of foot controls, and no concentrated exposure to cold temperatures.

Based on the testimony of a vocational expert, the ALJ found that, as of the date last insured, plaintiff had been able to do jobs which exist in significant numbers in the national and local economies.   Therefore, he concluded that she was not disabled during the relevant time period.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in

formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

### 1.    Agency Forms

Plaintiff was born in 1965, and was 33 years old on the alleged onset date of June 7, 1998.   She was insured for DIB through December 31, 2003.   (Tr. 165).

Plaintiff said she was unable to work because of a number of conditions, including a back injury, spinal stenosis, degenerative disc disease and mental conditions including depression.   (Tr. 169).

Plaintiff had worked at several jobs.   Her last job was as a dump truck driver for a concrete company.   (Tr. 170).

### 2.    Evidentiary Hearing

Plaintiff was represented by an attorney at the hearing on September 6, 2012. (Tr. 29).   Plaintiff's counsel submitted a residual functional capacity questionnaire from Dr. Kennedy.   (Tr. 30).

At the time of the hearing, plaintiff lived with her husband and four children. Her children were ages six, eight, ten and twelve.   She testified that she had lumbar fusion surgery in June, 2012.   (Tr. 32).

Plaintiff injured her back on June 7, 1998, while changing dump truck tires. She tried conservative treatment, but ultimately had lumbar fusion surgery on January 3, 1999.   In July, 2003, a spinal cord stimulator was implanted because she was having residual sciatic nerve pain.   She did not see any doctors for a while after she first got the stimulator because "she really didn't need to."   She had

6

surgery in 2010 to replace the stimulator.   (Tr. 33-35).   When the stimulator is on, it blocks the pain signals and makes her feel like her lower body is asleep, like a pins and needles sensation.   (Tr. 44-45).   She also recently had cervical spine surgery.   (Tr. 50).

Much of plaintiff's testimony focused on her condition at the time of the hearing.

A vocational expert also testified.   The ALJ asked a hypothetical question that corresponded to the ultimate RFC findings, set forth above.   The VE testified that this person could not do plaintiff's past work but she could do other jobs such as order clerk and document preparer.   (Tr. 56-57).

### 3.   Medical Treatment

In January, 1999, Dr. David Kennedy performed surgery on plaintiff's low back consisting of a bilateral laminectomy at L4-5, a left discectomy at L4-5, and spinal fusion at L4-5.   This followed a work injury which occurred in June of 1998, and a trial of conservative treatment.   (Tr. 262-267).   She was doing fairly well following that surgery, but she had a recurrence of pain after she was hit by a grocery cart in April, 1999.   Dr. Kennedy prescribed physical therapy and epidural steroid injections.   In June, 1999, Dr. Kennedy noted that she was depressed and recommended a psychiatric evaluation.   About two weeks later, he noted that she had been hospitalized after a suicide attempt.   Dr. Kennedy reassured her that the radiographic and electrical studies did not demonstrate any significant nerve root compression, and he suggested consideration of trigger point injections and a dorsal column stimulator.   In January, 2000, she complained to Dr. Kennedy of

7

aching in her low back and intermittent pain in her legs.   A decision regarding the dorsal column was still pending.   In June, 2000, examination showed a persistent decrease in the range of motion.   Straight leg raising was negative and motor examination was intact.   In September, 2000, her condition was the same and Dr. Kennedy again noted that the decision regarding the dorsal column was still pending.   (Presumably, this refers to a decision by the worker's compensation carrier to authorize the stimulator.)   In January, 2002, Dr. Kennedy "reviewed the video tape and discussed findings with her which showed that she was performing routine daily activities."   She next saw Dr. Kennedy in February, 2003.   She was about the same.   He again suggested that she be evaluated by another doctor for a dorsal column stimulator.   On September 11, 2003, Dr. Kennedy noted that Ms. Lemoine had a permanent dorsal column stimulator placed in July, and she had "excellent pain relief with this."   He stated that she was at maximum medical improvement, and that she "should be in a job capacity where she is not lifting more than 10 pounds, nor doing more than occasional bending, twisting or stooping." (222-237).

In July, 2003, Dr. Anthony Guarino, a pain management specialist, noted that plaintiff recently had a permanent spinal cord stimulator placed, which gave her an 80% reduction in her pain.   She did not require any pain medications and was walking 5 miles a day.   (Tr. 350).

The records reflect little, if any, medical treatment for plaintiff's back until March, 2010, when she began seeing a chiropractor for neck pain with numbness and tingling in her arm.   The doctor noted that she had a history of lumbar fusion

8

in 1999 and implantation of a neurostimulator in 2003.   With regard to her low back, he noted tenderness at L4-5.   Straight leg raising caused lumbar pain but no radiation.   (Tr. 774).

Ms. Lemoine underwent additional lumbar surgeries in 2010, 2011 and 2012.   (Tr. 901-902, 1001-1002, 1003).   As these procedures were well after the date last insured, the Court will not review that evidence in any detail.

### 3.   Dr. Kennedy's Opinions

As was noted above, in September, 2003, Dr. Kennedy stated that Ms. Lemoine was at maximum medical improvement, and that she "should be in a job capacity where she is not lifting more than 10 pounds, nor doing more than occasional bending, twisting or stooping."   (222-237).

In September, 2012, Dr. Kennedy completed a Residual Functional Capacity Questionnaire.[2]   He indicated that Ms. Lemoine suffered from persistent lumbar pain radiating from her thigh to her calf and foot, with numbness from the knee distally.   He noted objective signs of 50% reduced range of motion, sensory loss, reflex changes, tenderness, muscle spasms and impaired sleep.   He said that her medication caused drowsiness.   He said that she could sit and stand/walk for less than 2 hours a day, must be able to walk around every 15 minutes, and must be able to take an unscheduled break 3 or 4 times a day.   He indicated that plaintiff could never stoop, crouch, climb ladders, or reach with either arm.   He also said that she would be likely to miss more than 4 days of work a month.   (Tr.

---

[2] This document was not marked as an exhibit until the Appeals Council stage.   See, Tr. 5. However, it is clear from the transcript of the evidentiary hearing and the ALJ's decision that the document was submitted to the ALJ and considered by him.

1170-1177).

## <u>Analysis</u>

Plaintiff's first argues that she could not have collected DIB while she was receiving Worker's Compensation benefits.   She points out that her Worker's Compensation claim was not finally settled until after her date last insured.   She seems to suggest that her date last insured should therefore be extended.   She is incorrect.   While her DIB payments might have been reduced while she was receiving Worker's Compensation payments, the receipt of Worker's Compensation payments would not have precluded her from applying for or receiving DIB payments.   See, 42 U.S.C. §424a.

Ms. Lemoine also says that she was unaware that she might be eligible for DIB until October of 2010, and was unaware that "there was a deadline of December 31, 2003, by which I should have applied."   Doc. 25, p. 4.   However, December 31, 2003, was obviously not a deadline for her application, but is the date last insured, meaning that she is entitled to benefits only if she can demonstrate that she was disabled as of that date.   *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).    And there is no legal support for the argument that plaintiff's date last insured should be extended because she was unaware that she might be entitled to benefits.

Plaintiff's third argument regarding her attorney's performance cannot be addressed here.   This Court has jurisdiction under 42 U.S.C. § 405(g) to review whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir.

1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).   Plaintiff's claim that her attorney mishandled her case cannot be the basis for relief in this case against the Commissioner.   "There is no principle of effective assistance of counsel in civil cases. Shortcomings by counsel may be addressed in malpractice actions; they do not authorize the loser to litigate from scratch against the original adversary."   *Slavin v. C.I.R.*, 932 F.2d 598, 601 (7th Cir. 1991).

Plaintiff's second point, regarding the weight given to Dr. Kennedy's opinion, is an issue that is properly raised here.   The ALJ accepted Dr. Kennedy's first opinion, but rejected Dr. Kennedy's second opinion, rendered in 2012.

It is the function of the ALJ, and not this Court, to weigh the evidence and decide conflicts in the evidence, and this Court cannot substitute its judgment for that of the ALJ.   *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005).   The ALJ was required to weigh the conflicting opinions using the criteria set forth in 20 C.F.R. §404.1527(a) through (d).   See, §404.1527(e)(2)(iii).

ALJ O'Blennis gave valid reasons for choosing between the two conflicting opinions.   He accepted the first opinion, rendered in 2003, because Dr. Kennedy's treatment records were consistent with the record as a whole and it was supported by medically acceptable clinical and laboratory techniques.   He gave little weight to Dr. Kennedy's 2012 opinion because "it is not consistent with his treatment notes at the time of the claimant's date last insured."   (Tr. 19).

At the last visit in 2003, Dr. Kennedy noted that Ms. Lemoine had a permanent dorsal column stimulator placed in July, and she had "excellent pain relief with this."   He stated that she was at maximum medical improvement, and

11

that she "should be in a job capacity where she is not lifting more than 10 pounds, nor doing more than occasional bending, twisting or stooping." (222-237). This was consistent with Dr. Guarino's note written a few months earlier, indicating that plaintiff recently had a permanent spinal cord stimulator placed, which gave her an 80% reduction in her pain. She did not require any pain medications and was walking 5 miles a day.  (Tr. 350).

Ms. Lemoine argues that Dr. Kennedy's second opinion was an assessment of her condition at the end of 2003, and not her current condition, which, she says, "has worsened." Doc. 25, p. 6. She does not explain how Dr. Kennedy's 2012 opinion could be considered to be consistent with his office note from the last time her saw her in 2003, or with Dr. Guarino's note from July, 2003.

The opinions of treating doctors are to be evaluated under 20 C.F.R. §404.1527. Obviously, the ALJ is not required to accept a treating doctor's opinion; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted).  If is the function of the ALJ to weigh the medical evidence, applying the factors set forth in §404.1527.   Supportability and consistency are two important factors to be considered in weighing medical opinions.  See, 20 C.F.R. §404.1527(d).  In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010),

12

citing §404.1527(d).

The ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, he may "bend over backwards" to help a patient obtain benefits.  *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). See also, *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

When considered against this backdrop, the Court finds no error in the ALJ's weighing of Dr. Kennedy's opinions.  The ALJ correctly concluded that Dr. Kennedy's office notes for the relevant period do not support the severe physical limitations set forth in his 2012 report.

Because Ms. Lemoine applied only for DIB, she must show that she was disabled as of the date she was last insured for DIB, i.e., December 31, 2003.   It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date.  *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).   She has not done so here.   The medical records establish, as Ms. Lemoine admits, that her condition worsened after her date last insured.

The Court is not unsympathetic to Ms. Lemoine's situation, but the Court cannot decide a case based on sympathy.  The most that can be said is that reasonable minds could differ as to whether Ms. Lemoine was disabled during the relevant time period.   In that circumstance, the ALJ's decision must be affirmed if it is supported by substantial evidence.   And, the Court cannot reweigh the

13

evidence or substitute its judgment for that of the ALJ in reviewing for substantial evidence.   *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

<u>**Conclusion**</u>

After careful review of the record as a whole, the Court is convinced that ALJ O'Blennis committed no errors of law, and that his findings are supported by substantial evidence.   Accordingly, the final decision of the Commissioner of Social Security denying Karen Lemoine's application for disability benefits is **AFFIRMED**.

The Clerk of Court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   May 6, 2015.**

<u>**s/ Clifford J. Proud**</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**

14